UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARVIN LEROY ROBERTS,

    Petitioner,

v.                                        Case No. 3:18-cv-434-TJC-JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

    Respondents.
_____

**ORDER**

**I. Status**

Petitioner, Marvin Leroy Roberts, a former inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.[1] Doc. 1. Petitioner challenges a state court (Baker County, Florida) judgment of conviction for possession of a firearm by a convicted felon, for which he was sentenced to a

---

[1] Petitioner filed the Petition while he was in FDOC custody serving his state court sentence. However, a review of the Florida Department of Corrections website shows that Petitioner completed his sentence and was released from FDOC custody on May 31, 2019. See Corrections Offender Network, Florida Department of Corrections, available at www.dc.state.fl.us/offendersearch (last visited Mar. 1, 2021).

37.35-month term of incarceration. Doc. 1 at 1. Respondents filed a Response.[2] See Doc. 9. The Court provided Petitioner with an opportunity to file a reply (Docs. 11, 13), but he did not do so. This case is ripe for review.

## II. Governing Legal Principals

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

---

[2] Attached to the Response are several exhibits. The Court cites to the exhibits as "Resp. Ex."

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not

3

> mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope

4

v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including

5

> constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome,

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).

[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

6

> 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir.

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

7

2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied

8

to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't

9

of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III. Analysis

In the Petition, Petitioner raises three grounds for relief, all of which are premised upon claims of ineffective assistance of counsel. See generally Doc. 1. In Ground One, Petitioner argues that his plea was involuntary because prior to his plea, his trial counsel failed to investigate and file a motion to suppress the firearm that was illegally seized from Petitioner's vehicle. Id. at 5. In Ground Two, Petitioner argues that his plea was involuntary because prior to his plea, his trial attorney failed to advise him "of the essential elements of the offense charged[] and the viable defenses . . . ." Id. at 7. And in Ground Three, Petitioner asserts that his trial counsel was ineffective for allowing him to enter a plea when he was under the influence of prescription medication, rendering his plea involuntary. Id. at 8. Respondents argue that these three claims are unexhausted and procedurally defaulted, and that Petitioner has failed to show cause or prejudice to overcome this procedural bar. See Response at 6-9. The Court agrees.

Petitioner raised these three claims in his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Resp. Ex. E. The trial court summarily denied each claim. See generally Resp. Ex. F. As to Ground One, the trial court found the following in relevant part:

In support of Defendant's first claim, Defendant argues that counsel failed to investigate or advise Defendant of the possibility of suppression of the seized firearm. Defendant claims that the firearm was illegally seized, and the seizure failed both the "search incident to arrest" and "plain-view" doctrines. Defendant claims that if he had been advised of a viable suppression defense, he would not have entered the plea due to a reasonable probability of successful suppression. Defendant's claims are refuted by the record. Counsel candidly described the status and difficulties with the investigation for Defendant's case. Counsel confirmed with Defendant that they had spoken several times about the case, "the issues that [arose]" and the steps counsel's office had taken to come to a resolution in the case, specifically the "steps . . . taken to try to build up a defense in [the] case and where that would lead". See Change of Plea and Sentencing Transcript at 4 (lines 4-12). Defendant affirmed that he thought he had an adequate understanding of the efforts counsel's office had made to represent him and that he was satisfied with those efforts. See id. (lines 12-18). In addition, counsel explained during the plea colloquy that the delay in tendering a plea was not due to Defendant's reluctance to accept responsibility or accept the plea, "but [counsel] had told [Defendant] that there were certain issues [counsel] was trying to factor through to try to come up with a defense for a suppression in this case," which Defendant confirmed. See id. at 6 (lines 16-23). During the sentencing phase of the hearing, counsel discussed the rationale behind the delay in case resolution and stated, "I thought I was on the cusp of getting information to come in here and deal with the issue we had brought up. That's where we fell short at. Any delay is not really attributable to my client, it has been mine, really, in trying to work on this case." See id. at 23 (lines 7-12). The Court then asked Defendant if he wanted anything else to be heard before a sentence was pronounced, and Defendant said no. See id. at 23 (lies 24-25)- 24 (lines 1-2). The record indicates that

11

> counsel and Defendant had discussed possible suppression defenses, that Defendant was aware of the efforts to investigate those defenses, and Defendant was satisfied with those efforts and wished to tender a plea. Defendant is not entitled to go behind sworn representations made during the plea colloquy. Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006) (holding that where defendant argued with counsel regarding perceived failure to properly prepare the case, Defendant could not assert that his plea was involuntary, where "he was well aware of counsel's deficiencies prior to entry of his plea."); Contra Nelson v. State, 996 So. 2d 950, 952 (Fla. 2d DCA 2008) (holding defendant's statements during plea colloquy that counsel discussed filing motions with him did not conclusively refute an ineffective assistance of counsel claim, where suppression issues were not discussed during the plea colloquy). Where Defendant "clearly states on record that he was satisfied with his attorney's services . . . he cannot now assert [during a post-conviction motion] that at the time of the plea's entry he has serious doubts about his attorney's effectiveness." Davis, 938 So. 2d at 557. Thus, this claim is raised without merit.

Resp. Ex. F. As to Ground Two, the trial court found in pertinent part the following:

> With respect to Defendant's second claim, he asserts that counsel failed to properly inform him of the essential elements of the offense, possible defenses, and the State's burden to prove the case against him beyond a reasonable doubt. Defendant claims that if he had been so apprised, he would not have entered the plea, but would have insisted on going to trial. Defendant has failed to establish the prejudice prong of Strickland. Counsel confirmed that Defendant knew they could proceed to trial that day, but by tendering a plea he waived his right to a trial. See Change of Plea and Sentencing Transcript at 4 (line 25)- 5 (lines 1-6).

12

> Counsel stated that Defendant's single count was "possession of a weapon by a convicted felon . . . a second-degree felony, level 5 offense." See id. (lines 13-18). Counsel confirmed that Defendant understood he was entering a no contest plea, and that's what he wished to do to resolve the case. See id. at 10 (lines 19-24); 14 (lines 5-22). As factual basis, the State stated that if they proceeded trial, they "would have been prepared to prove" that Defendant did possess a weapon, and that he was a convicted felon. See id. at 15 (lines 1-10). Prior to accepting the plea, the Court confirmed that Defendant was aware that a jury was selected and stated, "if you wanted to, you could require the state to present evidence to prove that you are, in fact, guilty of this offense, or not guilty, And one of the things you waive, is you waive that right to that jury trial, you waive the right to require the state to prove this crime against you by entering this plea." See id. at 16 (lines 12-21). The record shows that Defendant was on notice about the elements of the charge, the State's burden to prove those elements, and that he was waiving the right to a jury trial by tendering an open, no contest plea to the Court. Thus, this claim is raised without merit.

Resp. Ex. F. As to Ground Three of the Petition, the trial court found the following:

> In support of Defendant's third claim, Defendant alleges that he was under the influence of prescription medication, which interfered with his decision making during the change of plea hearing. Defendant alleges that he informed counsel that he was taking several medications, including OxyContin, and he was under the impression that the case would be continued on those grounds. Defendant's claims are refuted by the record. During the plea colloquy, counsel asked Defendant if there was "anything physically or mentally wrong" with Defendant that would prevent him from understanding the plea proceedings, and

13

> Defendant answered in the negative. See Change of Plea and Sentencing Transcript at 9 (lines 4-11). Counsel followed up by stating that he and Defendant had discussed the several medications Defendant was taking, specifically naming OxyContin for pain management, and asked if he had taken any medication that day, to which Defendant responded he had not. See id. (lines 12-21). Again, counsel noted that Defendant was taking medication for blood pressure and memory functions. See id. (lines 22-25). Defendant stated that the memory medication was for dementia, but clarified that dementia was "coming," and he has not been fully diagnosed with dementia. See id. at 10 (lines 1-14). Defendant affirmed once again that he did not feel like he was under the effects of any medication. See id. (lines 15-18). Prior to accepting Defendant's plea, the Court confirmed that Defendant was not under the influence of "any substances, medications, anything at all" that would impair Defendant's ability to understand what he was doing with respect to his case. See id. at 16 (lines 22-25)-17 (lines 1-6). At no point did Defendant indicate that his medications were affecting his judgment or that he did not wish to enter a plea that day. Further, Counsel relayed to Defendant that although he would ask, there was no guarantee that the Court would postpone sentencing, and Defendant confirmed he understood. See id. at 13 (lines 13-25)-14 (lines 1-15). Where a trial court inquired about defendant's "use of medication and the effects of the medication on his ability to understand the plea or the plea discussion," and the defendant denies "any ill effects and throughout the course of the plea colloquy appeared lucid," the record will conclusively refute a claim that defendant was unable to enter a knowing and voluntary plea. Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006). Thus, this claim is raised without merit.

Resp. Ex. F.

Petitioner did not timely appeal the denial of his Rule 3.850 motion.

14

Although he filed with the First District Court of Appeal a motion for belated appeal fifty-five days after the trial court rendered its denial, the First DCA found Petitioner was not entitled to a belated appeal. See Resp. Ex. H-K. As a result, these claims are unexhausted and procedurally defaulted. See Nieves v. Sec'y, Fla. Dep't of Corr., 770 F. App'x 520, 521 (11th Cir. 2019) (noting "[i]n Florida, exhaustion usually requires not only the filing of a [Rule] 3.850 motion, but an appeal from its denial."); see, e.g., Hill v. Sec'y, Fla. Dep't of Corr., 2020 WL 5217186, at *4 (S.D. Fla. Aug. 6, 2020) report and recomm. adopted, 2020 WL 5216526 (S.D. Fla. Sept. 1, 2020).

In the Petition, Petitioner does not argue cause for or prejudice from this procedural default, nor does he allege claims of actual innocence justifying application of the fundamental miscarriage of justice exception to the procedural bar. See generally Doc. 1. Nevertheless, even if these claims were properly before the Court, Petitioner's ineffective assistance of counsel claims are without merit because Petitioner cannot demonstrate the necessary prejudice under Strickland.

During his plea colloquy, the Court asked Petitioner about the facts surrounding the offense. Resp. Ex. B at 20-21. Petitioner admitted that at the time of his arrest, he was in possession of a firearm, but explained the gun belonged to a friend who left the gun in Petitioner's truck. Id. at 21. Petitioner advised that he put the firearm underneath his truck seat and was intending

15

on returning the gun to the friend when the police initiated a traffic stop. Id. Petitioner did not contest that he has an extensive history of prior felony convictions including a 2009 conviction for possession of a firearm by a convicted felon, see id. at 18; and he acknowledged that he was entering an open plea to a second degree felony and faced a maximum fifteen-year term of incarceration, see id. at 8. Upon the trial court's acceptance of Petitioner's plea, the state requested that he be sentenced to an eight-year term of incarceration, see id. at 19, but the trial court sentenced Petitioner to a 37.35-term of incarceration, which was the minimum guidelines sentence that Petitioner faced, see id. at 6, 24. On this record, Petitioner cannot demonstrate that but for counsel's alleged errors, he would not have pled guilty and would have instead proceeded to trial. Petitioner cannot show prejudice under Strickland, and his claims are denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3. If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of March, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:  Marvin Leroy Roberts
    Holly N. Simcox, Esq.

---

[6] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.